CONTINENTAL NAT. BANK OF NEW YORK v. MYERLE et al.

(Supreme Court, Appellate Division, First Department.   December 31, 1897.)

RECEIVERS—APPOINTMENT—ALLOWING CREDITORS CONTROL OF FUNDS.
    In an equitable action by one claimant of a fund against other claimants,
    to secure an adjudication upon conflicting claims, it appeared that the
    plaintiff had a prior claim for $10,000; that a claim of the Tradesmen's
    National Bank, a defendant, came next, and, according to the latter's state-
    ment, more than equaled the balance of the fund; then followed a large
    claim of the plaintiff; and then those of numerous defendants.   Upon
    plaintiff's motion for the appointment of a receiver, there was no evidence,
    though there were suggestions, that the claim of the Tradesmen's Bank
    was not enforceable against the fund.   Held that, in view of the assent
    of all the defendants thereto, and the solvent and responsible character of
    the two banks,·it was proper, in lieu of a receivership, to permit the plain-
    tiff to hold $10,000, and the Tradesmen's Bank the balance, pending the
    suit, and as a deposit of a fund in court, subject to the orders and judg-
    ment of the court.
    Van Brunt, P. J., dissenting.                    ·

Appeal from special term.
Suit by the Continental National Bank of New York against David
Myerle, executor, and others.   From an order granting an injunc-
tion, and appointing a receiver, defendants appeal.   Modified.

The action is an equitable one, by one claimant, the plaintiff, against the
other claimants, to protect the lien of the plaintiff, and secure an adjudication   .
in one suit upon several conflicting claims to a sum of $129,811.45 which was   ·
obtained from the United States government upon a contract with the navy
department for certain work done upon the iron-clad monitor Monadnock.   The
following facts appear from the complaint and affidavits:
Phineas Burgess made a contract with the navy department to do work upon
the monitor, but before its completion the work was suspended by the govern-
ment, and long delays occurred, so that the contract was not completed until
1883.   With Burgess were associated as partners in the contract the defend-
ant James F. Secor and one Charles A. Secor, under the firm name of Burgess
& Secor.   Pending the completion of such contract, Burgess or his firm bor-
rowed sums of money from the plaintiff and from the defendant the Trades-
men's National Bank, and as security therefor assigned proportionate parts

of the amount to be recovered against the government. On July 8, 1878, in consideration of value received from the firm of Zeno Secor & Co. (composed of Zeno Secor and the said James F. and Charles A. Secor), who appear in some way to have been interested in the contract, Burgess executed Exhibit A, by which he agreed to deliver to or deposit with the plaintiff a United States navy voucher for a sum equal to $10,000, as soon as he should receive the same from the government on account of his work, as security for the payment of a note for $10,000 made by Zeno Secor & Co., or any note given in extension thereof. This note has been renewed from time to time, and a renewal note for such amount, included with other sums, is now outstanding, and held by the plaintiff. On December 9, 1883, Burgess & Secor and the individual members of that firm assigned all their claims against the government under the contract to the Tradesmen's National Bank as security for moneys theretofore or thereafter to be loaned by that bank to the said firm or persons, or any of them. The claim of the Tradesmen's Bank for money so advanced amounts to $69,937.74 principal, and, including interest, to $122,271.68. Phineas Burgess died in November, 1884, leaving a will, whereof the defendant Myerle is executor. Before his death he presented his claim for compensation to the navy department, which in 1885 was referred to the United States court of claims. In 1886, Myerle, as executor, commenced an action in the court of claims to recover the amount due upon said contract, and on January 27, 1897, obtained a judgment for the amount of the fund herein. By his will Burgess bequeathed to Charles A. and James F. Secor and Myerle all his claims under the contract. Charles A. Secor died in December, 1884; his administrator, William H. Secor, has also died; and the defendant James F. Secor is the sole surviving partner of Burgess & Secor. Zeno Secor is also deceased, and James F. Secor is sole surviving and liquidating partner of Zeno Secor & Co. On September 25, 1885, the plaintiff received a pledge of the whole of the award which the court of claims might thereafter grant on account of the Monadnock, subject to the claim thereon of the defendant the Tradesmen's National Bank. The indebtedness to the plaintiff, which this instrument was intended to secure. as claimed by the plaintiff, exceeds the sum of $75,000. It was signed by William H. Secor, as administrator of Charles A. Secor, deceased; Zeno Secor & Co., in liquidation; James F. Secor; Burgess & Secor, "as to Charles A. Secor's and James F. Secor's interest in said firm and in above claim"; and by David Myerle, "as executor of Phineas Burgess, as to promised lien of $10,000 on his interest in above claims." It further appears that there are outstanding large unsettled claims for counsel fees in connection with collecting the claim from the government, and that the defendants Telford and Vanderbilt claim a transfer or some equitable appropriation of part of the fund.

These facts are shown by the complaint and supporting affidavits on behalf of the plaintiff, and the answering affidavits on the part of the defendants, which were used upon the motion for an injunction and a receiver during the pendency of the action. The court below granted the motion, stating in its opinion that it was impossible, in view of the disagreement between the parties, to say how much each of the parties was entitled to of the fund, and that this could only be determined after a trial, that the form of action was proper, and that, pending it, it was but right that the fund should be held intact; and he continued the injunction and appointed a receiver; and it is from the order thereupon entered that the defendants appeal.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Walter S. Logan, for appellants.
John L. Cadwalader, for respondent.

O'BRIEN, J.   We agree with the view, taken by the judge below, that the action is proper, and that the fund should be held subject to the judgment to be entered therein. But we have been impressed with the arguments based upon the expense and hardship which would result from having the fund remain in the hands of the re-

ceiver, and we have examined the facts with a view of seeing whether some other disposition might not be made, which, without determining the conflicting claims, would be more equitable than allowing the fund to remain intact in the receiver's hands.

In point of time, the claim of the plaintiff as to the $10,000 voucher takes precedence, and if it can be shown that the amount finally awarded by the government represents to that extent the navy voucher pledged as collateral security to the plaintiff, then the plaintiff should have awarded to it that sum out of the fund. There does not appear to have been any interest allowed by the government, nor do we find any language in the assignment (Exhibit A) from which it can be inferred that $10,000 and interest was pledged; the instrument referred to being one by which Phineas Burgess agreed "to deliver to or deposit with the Continental National Bank a U. S. navy voucher for a sum equal to ten thousand ($10,000) dollars, * * * said voucher to be held as collateral security for the payment of a certain promissory note made by Zeno Secor & Co. * * * for ten thousand ($10,000) dollars, or any note given in extension thereof." It will be noticed that this is not an agreement to guaranty or pay the note held by the plaintiff, but a contract to deliver to it a voucher for $10,000, which, when received, the bank might hold or apply as collateral security on account of the note. The right to this sum of $10,000 will, of course, necessarily depend upon whether the plaintiff can connect the United States navy voucher for $10,000 with the judgment for $129,811.45 rendered by the court of claims. As the government does not allow or pay interest, and no interest is shown to have been included in this judgment, it would apparently restrict the claim of the plaintiff upon this instrument to $10,000.

Next in order of time is the assignment to the Tradesmen's National Bank. With respect to that the substantial question is as to the amount of the claim, of which the plaintiff pleads ignorance, but in the affidavit of the plaintiff's president it is said: "It is, I believe, somewhere between thirty and forty thousand dollars, but I cannot state accurately." On the part of the defendants we have the affidavit of the cashier of the Tradesmen's Bank and of the only surviving member of the firm of Burgess & Secor, reciting that the amount due that bank upon the notes of Phineas Burgess, Burgess & Secor, and Charles A. Secor, amounts, with interest, to $122,271.68. If this claim, together with the plaintiff's of $10,000, should be sustained, then it is evident that the fund would be entirely exhausted. In fact, there will not be enough to pay these claims in full, because there are concededly certain amounts which must first be deducted for counsel fees in obtaining the award from the government, which the court below recognized, and directed that the counsel should be allowed to have their fees fixed and paid out of the fund, leaving the balance to be adjusted between the conflicting claimants in the action.

Were this the whole of the case, the disposition to be made of the fund would be simple. But we have next in order the claim of the plaintiff to the fund under a subsequent assignment, which is

signed unconditionally only by the administrator of Charles A. Secor, by Zeno Secor & Co., in liquidation, and by James F. Secor. The interest which Zeno Secor & Co. had in the recovery is not made clearly to appear; but the signature of Burgess & Secor is limited to "Charles A. Secor's and James F. Secor's interest in said firm and in above claim"; and the signature of David A. Myerle, "as executor of Phineas Burgess, as to promised lien of $10,000 on his interest in above claim." And that instrument recites that it is "for the purpose of better evidencing that the Continental National Bank of New York is and has been entitled to receive any award the court of claims may hereafter grant or decree Phineas Burgess or Burgess & Secor on account of his or their claims against the United States government,   *   *   *   subject to the claim thereon of the Tradesmen's National Bank."

As to the order of priority, it will be noticed no real dispute exists, because the order is given in the affidavit of the president of the plaintiff as follows:

"The Continental National Bank claims a first lien upon the amount to be received under the assignment attached to the complaint marked 'A' [namely, the $10,000 claim]. The Tradesmen's National Bank claims next to be entitled to repayment of a considerable amount advanced by it, the exact amount of which I cannot state.   *   *   *   And, next, the Continental National Bank claims to be entitled to the remainder of the fund, under assignments from the parties interested, to represent amounts advanced by it to various parties, as set out in the complaint."

As we have already suggested, therefore, as to the Tradesmen's National Bank, the serious question is as to the amount. In assailing this, the respondent calls attention to the fact that the claims of the Tradesmen's Bank are against Burgess individually, while it appears that the parties interested in the contract out of which the fund arose were the various firms in which he had been engaged; that, while Phineas Burgess could assign his interest to pay his own debts, it is doubtful whether the various other firms could assign their interests to pay his debt to the Tradesmen's Bank; that, as a result, it would require the marshaling of the fund for the purpose of determining to whom it legally belongs; and that, as it was created largely by advances made by the plaintiff to the work itself, it could not be diverted to pay Phineas Burgess' debts. In addition, the agreement with the Tradesmen's Bank recites that it is given as collateral security; and from this it is urged that that bank must have had other security in hand which it would be necessary first to apply upon any debt existing in its favor. Again, it is suggested that the notes of Phineas Burgess held by the Tradesmen's Bank may be barred by the statute of limitations. It will be seen, however, that the plaintiff has not in any way destroyed the showing made by the Tradesmen's Bank that its debt amounts to the sum of $122,271.68 already mentioned; but the doubt created is as to whether such sum is still a claim legally secured by the written assignment referred to, and as to whether the persons who signed such instrument were legally entitled to pledge the entire amount of the fund recovered from the government as security for the debt due

48 N.Y.S.—46

to the Tradesmen's Bank.    None of the defendants raise any such objection to the payment to the Tradesmen's Bank.    On the contrary, they appear here insisting that that bank is justly entitled to the whole fund, and, while not objecting to tying up the $10,000 claimed by the plaintiff under its first assignment, they assent and request that the balance of the fund should be paid over to the Tradesmen's Bank without determining the validity of the claims, if any, of the parties to the action, or expressing an opinion as to the merits of the claims to this fund.    As these corporations are solvent, and entirely responsible, we think that the mere suggestion, without proof, of some weakness in their legal position, would not justify the withholding of the possession of this fund from them, or the placing of it in the hands of a receiver, to be burdened with the additional expense of his fees and disbursements, with the loss of interest, where it appears that such would have to be borne by the fund, and to that extent would be a loss to the Tradesmen's National Bank, if it finally succeeded upon the trial in establishing its right to the entire fund, or to such fund reduced by the plaintiff's claim of $10,000 and counsel fees.

We think, therefore, that the proper disposition to make of the fund, instead of appointing a receiver, is to have $10,000 deposited with the plaintiff, and the balance with the Tradesmen's National Bank, each to hold the separate amounts as the deposit of a fund in court, and subject to the orders of the court, and its judgment, when rendered in the action.    To this extent the order appealed from should be modified, without costs.

WILLIAMS, PATTERSON, and INGRAHAM, JJ., concur.    VAN BRUNT, P. J., dissents.